UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYREE CULBERSON,

                Petitioner,                Case No. 2:23-cv-10994
                                                                   Hon. Sean F. Cox

v.

JOHN CHRISTIANSEN,[1]

                Respondent.
_____/

## OPINION DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING MOTION FOR EVIDENTIARY HEARING

Tyree Culberson filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges Culberson's Genesee Circuit Court jury trial conviction of three counts of first-degree murder, MICH. COMP. LAWS § 750.316; one count of first-degree arson, MICH. COMP. LAWS § 750.72; possession with intent to deliver less than 50 grams of cocaine MICH. COMP. LAWS § 333.7401(2)(a); possession with intent to deliver methamphetamine, MICH. COMP. LAWS § 333.7401(2)(b); and related firearms offenses. Culberson was sentenced to mandatory life imprisonment for the murder convictions and lesser terms for his other offenses.

The habeas petition raises four claims: (1) the admission of an autopsy photo rendered Culberson's trial unfair, (2) Culberson's right to present a defense was violated when an attorney for one the victims declined to testify at trial by invoking the attorney-client privilege, (3) insufficient evidence was presented at trial to establish Culberson's identity as the perpetrator of

---

[1] The Court substitutes Culberson's current Warden as the proper Respondent. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006).

the murders and arson, and (4) the prosecutor violated a discovery order by untimely disclosing evidence that Culberson's fingerprints were found on a bottle of accelerant at the scene.

The Court will deny the petition because the state court adjudication of these claims did not unreasonably apply clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d).

# I

The Michigan Court of Appeals summarized the facts:

> This case arises from the deaths of Tiffany Loisell (Loisell), Kenneth Curler (Curler), and John Naum (Naum), whose bodies were recovered from a burning house on Woodrow Avenue in Flint on the morning of December 17, 2016. Autopsies revealed that the victims died from gunshot wounds. Prosecution witnesses testified that, before December 17, 2016, defendant was briefly residing at, and selling drugs from, the Flint house, when tensions developed between him and Loisell, who was a renter of the house. In particular, Loisell had recently stolen some money, some drugs, a black gun, and a telephone from defendant. In response, defendant exhibited a persistent brooding anger, which included displaying a pink revolver and saying, just days before the victims' deaths and arson, that he was "just gonna kill somebody."
>
> During a search of the home of defendant's companion, which was conducted while defendant was present, a pink revolver was discovered hidden in the box spring of a bed. Expert testimony linked a spent bullet recovered from the body of one of the victims, and also a spent bullet recovered from the shooting scene, to the pink revolver. An expert in DNA analysis opined that her testing indicated "strong support" that defendant was a contributor to evidence obtained from that gun.
>
> An arson specialist testified that arsonists typically use isopropyl alcohol or fingernail polish remover as effective accelerants that leave no sign of their use after a fire, and that empty bottles for alcohol and nail polish remover were found in the kitchen of the subject house. A fingerprint expert testified that defendant's thumbprint was discovered on the nail polish remover bottle.

*People v. Culberson (On Remand)*, No. 344075, 2021 WL 68786, at *1-2 (Mich. Ct. App. Jan. 7, 2021).

Following his conviction and sentence, Culberson filed a claim of appeal. His appellate counsel filed a brief in the Michigan Court of Appeals that raised five claims:

2

> I. Mr. Culberson was denied a fair trial by the introduction, over objection, of a shocking, gruesome and unfairly prejudicial photograph.
>
> II. Tyree Culberson was denied his constitutional rights to due process and to present a defense when the trial court precluded attorney Hemingway's testimony, which would have established that Kenneth Curler was receiving threats on his life at the time he was murdered, based on the court's erroneous conclusion that attorney-client privilege applied.
>
> III. Mr. Culberson was denied his state and federal constitutional rights to due process where the evidence was not sufficient to convict him beyond a reasonable doubt of the murder and arson charges.
>
> IV. The prosecutor violated discovery and the late disclosure of crucial fingerprint evidence and its subsequent admission denied Mr. Culberson due process and his right to a fair trial.
>
> V. Mr. Culberson's due process rights were violated because jurors were allowed by the trial court to ask a witness about his opinion as to guilt.

Culberson also filed his own supplemental pro se brief that raised an additional eight claims. Culberson's habeas petition raises the first four claims presented to the Michigan Court of Appeals in his appellate counsel's brief. (ECF No. 1, PageID.5-10.)

The Michigan Court of Appeals affirmed in an unpublished opinion. The court rejected the claims raised in appellate counsel's brief, but it only briefly mentioned and summarily rejected the pro se claims. *People v. Culberson*, No. 344075, 2019 WL 7196913 (Mich. Ct. App. Dec. 26, 2019). Culberson appealed to the Michigan Supreme Court. The court remanded the case to the Michigan Court of Appeals to more fully consider Culberson's pro se claims, and it found that the claims raised by appellate counsel did not merit further review. *People v. Culberson*, 950 N.W.2d 50 (Mich. 2020). On remand, the Court of Appeals addressed and rejected the pro se claims. *Culberson (On Remand)*, 2021 WL 68786 (Mich. Ct. App. Jan. 7, 2021). According to Culberson, because of COVID and prison transfers he was unable to file another appeal in the Michigan Supreme Court. He filed the instant habeas petition on April 27, 2023.

3

II

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. *Id*. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

III

A

Culberson first claims that the admission of an autopsy photograph rendered his trial unfair. He attached a black and white copy of the challenged photograph to his direct appeal brief. (ECF No. 12-21, PageID.2063.) It is a photograph from Loisell's autopsy depicting her head and face. Her closed eyes appear to be bruised or discolored, her mouth is open, one small bullet entrance wound is somewhat discernible, but there is no blood or gore. (*Id.*) The medical examiner testified

4

at trial that the photograph showed Loisell's face after it had been cleaned up. (ECF No. 12-14, PageID.1106-07.) The trial court allowed admission of the photograph over defense counsel's objection that it was "kind of ghastly." (*Id.* at 1105.) The Michigan Court of Appeals rejected the claim, finding the photograph was "neither shocking nor otherwise inherently prejudicial." *Culberson (On Remand)*, 2021 WL 68786, at *2.

The Supreme Court has never ruled that the admission of crime scene or autopsy photographs violates due process. Rather, the Supreme Court has stated that just because a photograph "is shocking to the sensibilities of those in the courtroom" does not alone "render its reception a violation of due process." *Lisenba v. People of the State of California*, 314 U.S. 219, 228 (1941).

As a result, the Sixth Circuit has held that a challenge to the admission of a gruesome photo does not present a question of constitutional magnitude under clearly established Supreme Court law. *See Cooey v. Coyle*, 289 F.3d 882, 893-894 (6th Cir. 2002); *see also Franklin v. Bradshaw*, 695 F.3d 439, 456-457 (6th Cir. 2012)(admission of eighteen autopsy photographs of victims did not render state criminal trial fundamentally unfair); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005)(affirming district court's denial of habeas relief on claim challenging the admission of victim photographs).

Here, as reasonably found by the Court of Appeals, the photograph at issue was not overly gruesome or inherently prejudicial. In any event, because there is no clearly established Supreme Court law to support his claim, Culberson cannot demonstrate entitlement to habeas relief under § 2254(d).

5

**B**

Culberson's second habeas claim asserts that the trial court violated his right to present a defense when it allowed an attorney to invoke the attorney-client privilege, thereby preventing Culberson from eliciting testimony that one of the victims was threatened before the murders by someone other than Culberson.

At trial, defense counsel offered a theory that Bruce Benson and Noelle Curler might have been the perpetrators of the murders. Before the murders, Kenneth Curler was represented by attorney Jodi Hemingway in a child protective services proceeding. Defense counsel sought to call Hemingway as a witness at trial and question her about an email she had sent on Kenneth Curler's behalf to the Genesee County Prosecutor. The email urged the prosecutor to investigate death threats made by Benson and Noelle (Garcia) Curler against Kenneth Curler. (Email; ECF No. 12-21, PageID.2064.) At trial, Hemingway refused to testify about her communications with Kenneth Curler under the attorney-client privilege. (ECF No. 12-12, PageID.747.)

Defense counsel asserted that even if the communications from Curler to Hemmingway were privileged, there were parts of the email that referred to messages or threats coming from Benson and Noelle Curler that were not privileged. (*Id*. at 749.) Hemingway responded that she could not testify to or authenticate the source of the threats, as her information came indirectly from her deceased client. (*Id*. at 750-51.) The prosecutor added that Noelle Curler and Bruce Benson were both scheduled to testify anyway, and that defense counsel could cross-examine them about any threats. (*Id*. at 752.) The trial court ruled that it was going to "recognize Ms. Hemingway's privilege and not require her to testify." (*Id*. at 753.)

Later at trial, Noelle Curler testified. Defense counsel cross-examined her about an incident that had occurred after her divorce from Kenneth Curler. She testified that Kenneth had driven a

6

vehicle through her garage and attacked her in front of their children. (ECF No. 12-13, PageID.899.) She testified that during the resulting fight she stabbed Kenneth Curler. (*Id*. at 903.) Defense counsel also cross-examined Noelle Curler regarding Benson's dislike of Kenneth Curler, the fact that they were both in the "Cobras" gang, and about their whereabouts at the time of the murders. (*Id*. at 903-19.) Bruce Benson likewise testified and was subject to cross-examination. He admitted that he did not like Kenneth Curler, that they were both in the same gang, and that Benson had called Curler a snitch and a rat online. (*Id*. at 966-71.)

A Michigan State Trooper testified at trial that he learned during his investigation that Bruce Benson had made threats against Kenneth Curler. Benson initially refused to talk to the Trooper because as a gang member it was against his code to talk to the police. The Trooper later cleared Benson as a suspect in the murder after he checked on his alibi. (ECF No. 12-17, PageID.1763-65.)

The Michigan Court of Appeals rejected the claim, finding that the matters defense counsel wished to question Hemmingway about were privileged communications or work-product, and that Culberson's defense was not prejudiced because Noelle Curler and Benson testified and were subject to cross-examination. *Culberson (On Remand)*, 2021 WL 68786, at *4-6.

The state court decision did not involve an unreasonable application of clearly established Supreme Court law. An accused has a clearly established constitutional right to present witnesses to establish a defense. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986). However, a defendant does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial

7

courts." *Crane*, 476 U.S. at 689. Even relevant and reliable evidence can be excluded when the state interest is strong. *See, e.g., Washington*, 388 U.S. at 23 (attorney-client privilege). A state law justification for the exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

In *Washington*, the Supreme Court invalidated a Texas statue that prohibited criminal defendants charged as co-participants from testifying for one another at trial. 388 U.S. at 20-23. The Court cautioned, however, that its ruling should not be construed "as disapproving testimonial privileges, such as the privilege against self-incrimination or the lawyer-client or husband-wife privileges, which are based on entirely different considerations. *Id*. at 23 n.21. The Supreme Court subsequently expressly left open the question of whether the attorney-client privilege may be overcome "in exceptional circumstances" by a criminal defendant's constitutional right to present a defense. *See Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998).

Because the Supreme Court has never held that a defendant's constitutional right to present a defense may overcome the attorney-client privilege and compel an attorney to testify to privileged communications at a criminal trial, Culberson cannot show that the state court's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court law. *See Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006)(where the Supreme Court had expressly declined to decide the issue in a prior case, the petitioner faced "an impossible hurdle in showing the state court contradicted, or unreasonably applied, clearly established federal law"); *see also Quinn v. Haynes*, 234 F.3d 837, 846 (4th Cir. 2000). Therefore, Culberson cannot demonstrate entitlement to habeas relief under § 2254(d).

## C

Culberson next claims that insufficient evidence was presented at trial to establish his identity as the perpetrator of the murder and arson offenses. After reciting the applicable constitutional standard, the Michigan Court of Appeals determined that sufficient evidence was presented for a rational juror to conclude that Petitioner committed the crimes. *Culberson (On Remand)*, 2021 WL 68786, at *6-7.

The clearly established Supreme Court standard governing sufficiency of the evidence claims asks "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Habeas relief is warranted on a sufficiency of the evidence claim only if the state court's application of this standard was unreasonable. *See* 28 U.S.C. § 2254(d)(2). The court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The state court determination that sufficient evidence was presented to sustain Culberson's convictions was reasonable. First, several lay witnesses testified regarding Culberson's motive and opportunity to commit the crimes. Mark Meyers testified that he saw Culberson with a pink handgun on the morning before the crime. (ECF No. 12-11, PageID.724-25.) Meyers knew that Culberson was angry at Loisell for recently drugging him, and then stealing a phone, money, and crack cocaine from him. (*Id.* PageID.716-20.) Meyers saw Culberson pacing back and forth with his pink handgun and saying that he was going to kill someone. (*Id.* PageID.720.) Averee Littlejohn testified that Culberson called her repeatedly immediately after the time of the murders and asked her to hurry and pick him up from a parking lot. (ECF No. 12-16, PageID.1607-08.) As

they drove away, Littlejohn saw the firetrucks and police cars arrive at the scene of the crime. (*Id.* PageID.1610.) Culberson removed the battery from his cell phone during the drive. (*Id.* PageID.1612.) She drove him to her home, where he drank and passed out in the bathroom. When she later saw him stand up from the bathroom floor, a pink handgun fell from him. (*Id.* PageID.1614-15.)

Forensic evidence linked Culberson to the crime. A State Trooper found the pink handgun hidden in a mattress at Littlejohn's home. (ECF No. 12-14, PageID.1237-38.) A firearms expert tested the gun and testified that the bullet that was recovered from Naum's neck and one found in a window at the scene matched the handgun. (ECF No. 12-15, PageID.1316-18.) An expert in arson investigations testified that bottles of fingernail polish remover and rubbing alcohol were found at the scene, and they were commonly used as forms of accelerant in arson cases. (ECF No. 12-16, PageID.1463-70.) A fingerprint expert testified that a fingerprint on the fingernail polish remover matched Culberson. (*Id.* PageID.1582-85.) A DNA expert matched testified that there was very strong support for concluding that Culberson's DNA was found on the pink handgun. (ECF No. 12-15, PageID.1420-22.)[2]

In light of this record, and viewing the evidence most favorably to the prosecution, a rational jury could have determined beyond a reasonable doubt that Culberson was the individual who perpetrated the murders and arson. Culberson fails to demonstrate entitlement to habeas relief with respect to this claim.

---

[2] The DNA sample was comprised of a mixture originating from four unrelated individuals. The expert calculated that it was 200,000 times more likely that the mixture came from Culberson and three unknown individuals than it did from four unknown individuals. (*Id.* PageID.1421.)

**D**

Culberson's final claim asserts that the prosecutor violated a discovery order by untimely disclosing the evidence that his fingerprints were found on the nail polish remover bottle. It is well-settled, however, that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)(denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F. 2d 1275, 1281 (6th Cir. 1988). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F. 3d 416, 441 (6th Cir. 2002).

Petitioner's discovery violation claim does not provide a basis for granting habeas relief.

**E**

As a final matter, the Court notes that Respondent asserts that the petition should be dismissed because Culberson filed his petition after expiration of the statute of limitations. *See* 28 U.S.C. § 2244(d). Culberson filed a reply claiming that his filing was untimely because an outbreak of COVID at his prison caused a 6-month "shut down," his pro bono post-conviction counsel David Moffit died before preparing and filing his habeas petition, his legal papers were lost by the MDOC after a prison transfer, and he contracted COVID three times during the relevant period. (ECF No. 14, PageID.2335-36.)

The issue whether these circumstances entitle Culberson to equitable tolling involves disputed questions of fact. On the other hand, the substantive claims raised in the petition were able to be resolved on the existing record. Therefore, the Court exercises its discretion to bypass Respondent's statute of limitations defense. *See Smith v. State of Ohio Dept. of Rehabilitation*, 463 F.3d 426, 429, n. 2 (6th Cir. 2006)(explaining that AEDPA's one-year statute of limitations is not

jurisdictional and that the court may proceed to the merits of the petition "in the interest of judicial economy.")

## IV

Because none of Culberson's habeas claims merit relief, the habeas petition is denied. The Court further finds that reasonable jurists would not debate this conclusion, and thus, a certificate of appealability is denied. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Finally, because any appeal would be frivolous and not taken in good faith, leave to proceed in forma pauperis on appeal is likewise denied. 28 U.S.C. § 1915(a)(3).

## V

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: March 15, 2024

s/Sean F. Cox  
Sean F. Cox  
U. S. District Judge

I hereby certify that on March 15, 2024, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

s/J. McCoy  
Case Manager